# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2008

Charles R. Fulbruge III
Clerk

No. 07-20900

KATHLEEN BERNARDO,

Plaintiff-Appellant,

v.

AMERICAN AIRLINES INC,  Long Term Disability Plan,

Defendant-Appellee.

Appeal from the United States District Court for the
Southern District of Texas
USDC  4:07-CV-372

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff Kathleen Bernardo appeals from the judgment of the district court granting summary judgment in favor of Defendant American Airlines, Inc., Long Term Disability Plan and dismissing her claims for long-term disability benefits against Defendant.  For the reasons set forth below, we vacate and remand.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Kathleen Bernardo was employed by American Airlines, Inc. ("American Airlines") as a Manager of Airport Services. As an employee, Bernardo participated in the American Airlines Inc., Long Term Disability Plan (the "Plan"). The Plan is a welfare benefit plan under ERISA sponsored by American Airlines.[1] From November 2002 until November 2003, Bernardo was placed on "paid Management Leave of Absence (Extended Management Sick Leave)."

In August 2003, Bernardo was diagnosed with aplastic anemia by Dr. Lawrence Rice, who specializes in hematology. Bernardo was treated with cyclosporin A and prednisone. In February 2004, Bernardo sought long-term disability benefits under the Plan. Metropolitan Life Insurance Company ("MetLife"), the Plan's third-party administrator, received Bernardo's complete claim for benefits in March 2004. Bernardo's claim for long-term disability benefits included a letter from Dr. Rice, Bernardo's treating physician, stating that she was unable to work "due to severe pansytopena and side effects of medication, including profound fatigue, tremors, and nausea." Based on this information, MetLife determined that Bernardo became totally disabled on May 20, 2003,[2] and as such, MetLife approved long-term disability benefits for Bernardo effective November 19, 2003 through April 30, 2005.

---

[1] The Plan defines "disability" in relevant part as follows: "During the first 24 months for which [long-term disability] benefits are payable, you are considered totally disabled if you are not gainfully employed in any type of job for wage or profit or are unable to perform major and substantial duties of your own occupation because of sickness or accidental bodily injury. After 24 months for which benefits are payable, you are considered totally disabled if you are not gainfully employed in any type of job for any employer or are unable to engage in major and substantial duties of any occupation or employment for wage or profit for which you have become reasonably qualified by training, education or experience."

[2] MetLife, by letter dated March 26, 2004, notified Bernardo that the Plan had approved her claim for long-term disability benefits based on her becoming disabled on May 20, 2003 due to aplastic anemia. However, the effective date of these benefits was November 19, 2003 because American Airlines paid Bernardo salary continuation/sick pay through November 18, 2003.

Between March 26, 2004 and August 31, 2005, Bernardo provided three letters to MetLife from Dr. Rice explaining that Bernardo was in her second remission from aplastic anemia, having side effects from the cyclosporin A treatment, and had developed bilateral cataracts with significant visual impairment. Bernardo provided MetLife with additional medical records, and MetLife decided to extend her long-term disability benefits through August 31, 2005. However, MetLife also warned Bernardo that it would need additional medical information to substantiate her claim for any future long-term disability benefits.

MetLife re-evaluated Bernardo's claim. After reviewing the medical information provided by Bernardo and her physicians, as well as speaking with Bernardo's physicians directly, MetLife decided to deny Bernardo's long-term disability benefits past August 2005. MetLife denied Bernardo's benefits because the records "did not substantiate that she was totally disabled." MetLife relied on that portion of Dr. Rice's letter which stated that Bernardo was in her second remission from aplastic anemia and Dr. Minh Dong's report finding no disability from Bernardo's cataracts. MetLife notified Bernardo of this decision on September 2, 2005.

In September 2005, Bernardo sought a first-level appeal from MetLife's decision to deny her benefits and included reports from Dr. Rice and Dr. Dong. However, MetLife upheld its decision to deny her long-term disability benefits.

Bernardo then filed a second-level appeal in January 2006 with the Plan's Pension Benefits Administration Committee ("PBAC"), which had granted Charlotte Teklitz, its Managing Director, the authority to decide all second-level appeals for the Plan regarding health and welfare benefits plans.

Her second appeal included letters from: Bernardo, Dr. Rice, and two from Dr. Lee Pollack, a neurologist. Dr. Rice's letter of January 13, 2006 stated that Bernardo had been under his care for over two years "with a relapsing variant

of aplastic anemia." His letter also stated that Bernardo was treated with cyclosporin A and,

> [n]otes in my chart reflect that Ms. Bernardo has complained of neurologic symptoms almost from her first visit with me. Symptoms have included tremors, parethesias, unsteadiness and imbalance, vertigo-like problems, dysuria, headaches and others. . . . She has been undergoing extensive evaluation by a neurologist who has found objective abnormalities of MRI scans, spinal fluids and other tests.

This appeal also included two letters dated November 16, 2005 and January 18, 2006 from the neurologist, Dr. Pollack. The November 16, 2005 letter simply stated "Totally disabled due to cyclosporin A neurotoxicity." The January 18, 2006 letter stated:

> The patient [Bernardo] was placed on Cyclosporin A due to her aplastic anemia and thrombocytopenia, and she slowly began to develop progressive systemic and neurologic symptoms including headache, dizziness, near syncope, disorientation, as well as sweats and tremors. Other symptoms include episodic vertigo, which is at times disabling. . . . Her neurological examination is abnormal.

Dr. Pollack's conclusions were:

> [t]his patient is thought to have Cyclosporin neurotoxicity, which has been well described in literature. She has hard evidence of central nervous system abnormalities. . . . Based on reasonable medical probability, she has a full neurological disability to Cyclosporin A neurotoxicity, which was required for this patient in order to preserve life, given the setting of life threatening aplastic anemia . . . . Whether or not this neurological disability will be permanent is uncertain: however, I expect that this patient will remain in this disabled condition at least for several years while the Cyclosporin A clears from her system. Subsequent to that, reassessment can be performed to determine if persistent disability is present or not.

The PBAC had two Network Medical Review ("NMR") Elite Physicians, Dr. Nelson Chao and Dr. George Yanik, review Bernardo's claim for benefits. Dr.

Yanik, a Board-Certified Ophthalmologist, reviewed Bernardo's medical information, including the letters from Drs. Rice and Pollack. He found that the cataracts were not disabling.

Dr. Chao is Board-Certified in Oncology and Internal Medicine and is a Professor of Medicine and Immunology at Duke University. Dr. Chao also reviewed the medical records along with information obtained from MetLife. He agreed with MetLife's determination that Bernardo was not totally disabled under American Airline's description of her job. Dr. Chao's report states:

> The most recent medical records suggest that she in fact is doing quite well from a neurological standpoint and that she has no physical findings and there are no concerns regarding aplastic anemia. The neurological symptoms of cyclosporine toxicity are not clear.
>
> . . . .
>
> . . . The detailed explanation citing clinical information is that she no longer has aplastic anemia . . . . She may have some side effects from cyclosporine. These do not appear to be overwhelming. If there are concerns regarding neurotoxicity a consult from a neurologist may be of some use although it is likely that the findings of neurotoxicity do not preclude her from working.

Based on the reports from Dr. Yanik and Dr. Chao, the PBAC (through Ms. Teklitz) affirmed the Plan's decision to terminate Bernardo's long-term disability benefits.

Bernardo then filed suit against the Plan in the district court challenging the Plan's decision to terminate her long-term disability benefits as of August 31, 2005. The Plan filed a motion for summary judgment, and Bernardo filed a response which the district court treated as a cross motion for summary judgment. In November 2007, the district court granted summary judgment in favor of the Plan, and dismissed Bernardo's suit on the basis that,

> [t]he plan's decision was not an abuse of discretion. The plan reviewed MetLife's findings, the medical records of Bernardo, and an independent study by two doctors, who found that Bernardo was

not totally disabled as defined by the plan . . . . Substantial evidence exists, therefore, to support the plan's decision to end her benefits because Bernardo was not totally disabled.

Bernardo appeals.

II.

A.

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (C). In this circuit, an ERISA plan administrator's factual decisions are reviewed for abuse of discretion. Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 226 (5th Cir. 2004). A plan administrator abuses its discretion if it acts arbitrarily or capriciously. Meditrust Fin. Servs. Corp. v. Sterling Chems. Inc., 168 F.3d 211, 214 (5th Cir. 1999). When reviewing to determine whether the administrator's decision was arbitrary and capricious, the court should affirm the decision if it is supported by "substantial evidence." Id. at 215. A decision is arbitrary, and thus not supported by substantial evidence, if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." Id. (quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich., 97 F.3d 822, 828–29 (5th Cir. 1996).

B.

Bernardo argues that substantial evidence does not support the Plan's denial of benefits and the district court erred in granting summary judgment to the Plan.

The Plan's decision to terminate Bernardo's long-term disability benefits effective August 31, 2005 is based on the Plan's view that "[t]he information presented in support of [Bernardo's] claim no longer substantiates [her] inability to perform [her] occupational duties." The denial letter was based on progress

notes from Bernardo's treating physician, Dr. Rice, and her ophthalmologist, Dr. Dong, as well as the reports of the NMR Elite Physicians, Dr. Chao and Dr. Yanik. With regard to Bernardo's aplastic anemia, the denial letter cites Dr. Rice's progress notes and Dr. Chao's report in support of the fact that Bernardo had been in her second remission from aplastic anemia for over six months. The denial letter also cites Dr. Dong's opinion and Dr. Yanik's report in support of the fact that Bernardo's current visual impairment was not disabling and did not preclude Bernardo from performing her duties as a Manager of Airport Services with American Airlines.

Based on our review of the record, these conclusions do not reflect a rational connection between the known facts and the decision to deny benefits. Although the denial letter addresses Bernardo's aplastic anemia and cataracts, it does not mention her cyclosporin A neurotoxicity covered in Dr. Rice's and Dr. Pollack's reports. The reports of Bernardo's treating neurologist, Dr. Pollack, dated November 16, 2005 and January 18, 2006, are the primary direct evidence of Bernardo's cyclosporin A neurotoxicity. Dr. Pollack's note dated November 16, 2005 simply, but clearly, states: "Totally disabled due to Cyclosporin A neurotoxicity." Dr. Pollack's two-page letter, dated January 18, 2006, detailed Bernardo's relevant medical history, her symptoms, a summary of diagnostic tests he performed on her and his reasons for finding her totally disabled from the reaction to cyclosporin.

Dr. Rice's January 13, 2006 letter also documented Bernardo's neurological symptoms, which he thought "represented toxicity from cyclosporin." It is impossible to reconcile Dr. Chao's report with the reports of Dr. Rice and Dr. Pollack. Significantly, Dr. Chao does not purport to explain why the severe symptoms found by Dr. Pollock and Dr. Rice were not disabling.

This is not a situation in which the reviewing physicians reached a different medical conclusion from the medical evidence in a claimant's file or

where other evidence of the claimant's condition contradicts the diagnosis of the treating physician, such as occurred in cases relied on by the Plan. See Sweatman v. Commercial Union Ins. Co., 39 F.3d 594 (5th Cir. 1994) (insurer did not abuse its discretion in denying benefits based on its own investigation and the reports of its medical consultants, which differed from the diagnosis of the treating physician); Vercher, 379 F.3d 222 (5th Cir. 2004).

Unlike the cases the Plan relied upon in this case, an unexplained gap exists between Dr. Pollack's report finding disability and his explanation for this finding and the conclusory report of Dr. Chao, who found no disability. There is no evidence in the record that Dr. Chao considered the reports of Dr. Rice and Dr. Pollack with regard to Bernardo's cyclosporin A neurotoxicity, except for Dr. Chao's speculation that Bernardo "may have some side effects from cyclosporin" but these "do not appear to be overwhelming." The plan administrator and the reviewing physicians have presented no evidence that contradicts the treating physicians' conclusion that Bernardo "is 100% disabled from work, and likely has been since the onset of Cyclosporin A usage." Based on this record, the Plan abused its discretion in denying long-term disability benefits to Bernardo and the district court erred in granting summary judgment in favor of the Plan on this record.

### III.

For the reasons stated above, the summary judgment of the district court rejecting Bernardo's claim for long-term disability benefits is vacated. We remand this case to the district court to enter judgment in favor of Bernardo.

VACATED and REMANDED.